UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

JOHN WILLIAMS,                                :

               Petitioner,          :          **REPORT and RECOMMENDATION**

       -against-              :          02 Civ. 9131 (GBD)(KNF)

WILLIAM MAZZUCA, Superintendent,  :
Fishkill Correctional Facility; and
ELIOT L. SPITZER, New York State     :
Attorney General,
                         :

             Respondents.
------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE GEORGE B. DANIELS, UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

Before the Court is John Williams' ("Williams") petition for a writ of habeas corpus,

made pursuant to 28 U.S.C. § 2254.  Williams contends his confinement by New York state is

unlawful because his constitutional right to a speedy trial was violated by a four-year delay

between the date on which he was arrested initially, and the date on which his trial commenced.

The respondents oppose Williams' petition for habeas corpus relief.  They contend the

petitioner's claim is (1) unexhausted or, alternatively, (2) without merit.

## II.  BACKGROUND

On September 5, 1992, Williams, a pimp, and Simon Stewart ("Stewart") were arrested

for the fatal shooting, earlier that morning, in the Hunts Point section of the Bronx, of Joseph

Boyle ("Boyle"), a rival pimp.  Williams was released later that day, after a prosecutor

determined not to prefer charges against him.  Stewart was held in custody.  Williams was admonished, by law enforcement officials, to remain in the community pending further investigation.

On September 25, 1992, unbeknownst to Williams, a Bronx County grand jury returned an indictment charging him with: (1) one count of murder in the second degree; (2) one count of manslaughter in the second degree; (3) criminal possession of a weapon in the third degree; (4) criminal possession of a weapon in the second degree; (5) criminal use of a firearm in the first degree; and (6) attempted murder in the second degree.[1]  An arrest warrant was issued for Williams.

Detective Lonnie Spivey ("Spivey"), who had been assigned to investigate Boyle's death, was asked by Dennis Collins ("Collins"), an assistant district attorney, to effect Williams' arrest. Collins suggested that Spivey begin his search for Williams by visiting a red house with gray siding on Bathgate Avenue, in the Bronx.  At 2045 Bathgate Avenue, Spivey located the house matching the description provided to him by Collins.  However, Williams was not at the location. Moreover, the person who answered the door at the Bathgate Avenue address claimed he did not know Williams.

In January 1993, Spivey returned to 2045 Bathgate Avenue.  Once again Spivey was unable to locate Williams.  Spivey continued his search for Williams by visiting an address that Williams had provided to the police on the day Boyle was murdered. When Spivey failed to find Williams at the second address,  Spivey visited a hotel located at 1101 Westchester Avenue, in

---

[1] The indictment also charged Stewart with acting in concert with the petitioner and with separate charges.  Stewart was convicted for murder in the second degree and attempted murder in the second degree.

the Bronx, that Williams frequented.  The hotel manager told Spivey that Williams had not been on the premises for several months.

Spivey continued to search for the petitioner in the Hunts Point neighborhood of the Bronx.  He also tried locating Williams by contacting an automobile dealer in Connecticut who had sold Williams a car.  These efforts were fruitless.  Spivey abandoned his search for Williams and turned his attention to other criminal investigations for which he was responsible.

From early 1993 until late 1994, while Spivey made no effort to locate Williams, Williams was in contact with other officers assigned to Spivey's precinct, specifically, Officer Charles Rodd ("Rodd") and Sergeant Michael Perry ("Perry").  Moreover, Williams was arrested in Spivey's precinct twice during this time period, for charges unrelated to the Boyle homicide.

On March 9, 1995, a newly assigned assistant district attorney, Lisa Mattaway ("Mattaway") contacted Perry and instructed him to find Williams and to arrest him based on the warrant that was issued in 1992, following Williams' indictment.  Eighteen days later, Perry arrested Williams.

Fourteen months after Williams was rearrested, he drafted a motion to dismiss the indictment.  He alleged his Sixth Amendment right to a speedy trial has been violated.  On August 26, 1996, Williams' attorney filed the motion that Williams had drafted.  The trial court determined to defer deciding the petitioner's motion until a hearing could be held after Williams' jury trial was concluded.

On November 7, 1996, Williams was convicted of manslaughter in the first degree and criminal use of a firearm in the first degree.  Thereafter, a hearing was held in connection with Williams' speedy trial motion.

At the conclusion of the hearing, the court denied Williams' motion.  The court explained that after balancing: "(1) the length of delay; (2)  the reason for the delay; (3) the seriousness of the offense; (4) prejudice to the defendant; and (5) the extent of pre-trial incarceration," Williams' due process right to a prompt prosecution had not been violated.  See People v. Williams,  No. 6676/92, slip op. at 7 (N.Y. Sup. Ct. Oct. 27, 1997) (citing People v. Taranovich, 37 N.Y.2d 442, 373 N.Y.S.2d 79 [1975]).  The court reasoned, *inter alia*, that "the police officers involved in looking for the defendant acted reasonably and in good faith in attempting to locate him" and that it was not surprising that "the defendant proved difficult to locate . . . . [a] self-described pimp, the defendant used several different aliases, addresses, cars, dates of birth and social security numbers."  Id.  Moreover, the court found that "the fact that the investigation was dormant for a period of time was more likely attributable at least in part to the extent of violent criminal behavior occurring in the 41st Precinct at this time as described by Detective Spivey. His testimony [made] clear that an allocation of available resources was required.  There were apparently insufficient resources to actively pursue every wanted subject."  Id. at 10-11.  Upon finding the delay reasonable, the court turned to the issue of prejudice, and concluded that Williams had failed to demonstrate any prejudice resulting from the delay.  Id. at 12.

After denying Williams' motion, the court sentenced him to concurrent prison terms of six to eighteen years on the manslaughter conviction and nine to eighteen years on the firearm conviction.

Williams appealed his conviction to the New York State Supreme Court, Appellate Division, First Department.   On June 21, 2001, the petitioner's conviction was affirmed unanimously.  See People v. Williams, 284 A.D.2d 221, 726 N.Y.S.2d 269 (App. Div. 1st Dep't 2001).  The Appellate Division found that:

-4-

Defendant's constitutional speedy trial motion was properly denied. Defendant was not deprived of a speedy trial or due process by the 30-month delay between his indictment and arrest. The police acted reasonably and in good faith in attempting to locate defendant. While the reasons for the delay may not be compelling, and further efforts might have been made by the investigating detective, inadvertent delay, by itself, is not a reason to dismiss an indictment (People v. Taranovich, 37 N.Y.2d 442, 446). The seriousness of the crime (compare, People v. Staley, 41 N.Y.2d 789), the fact that defendant was not incarcerated during the period of delay and the complete lack of any prejudice outweighed the remaining Taranovich factors.

Id.

Thereafter, Williams made an application for leave to appeal from the Appellate Division's determination to the New York Court of Appeals.  That application was denied on August 24, 2001.  See People v. Williams, 96 N.Y.2d 926, 732 N.Y.S.2d 643 (2001). Williams then filed the instant petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

### III.  DISCUSSION

*Failure to Exhaust*

_____"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971).  To satisfy the exhaustion requirement, a habeas corpus petitioner must "fairly present" his or her federal claim to the highest state court from which a decision can be rendered. Daye v. Attorney Gen. of New York, 696 F.2d 186, 190-91 n.3 (2d Cir. 1982) (*en banc*).  A claim is "fairly presented" if the state courts are informed of "both the factual and the legal premises of the claim [asserted] in federal court." Id. at 191.  "[The petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." Id. 191-192.  Additionally, "having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all

-5-

available mechanisms to secure [state] appellate review of the denial of that claim." Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981) (citations omitted).

      In the instant case, the respondents contend the petitioner's Sixth Amendment speedy trial claim is factually different from the speedy trial claim he presented to the state court. According to the respondents, the delay protested by the petitioner in the state court was thirty months and the delay at issue in the instant petition is four years. Therefore, the respondents allege the Sixth Amendment speedy trial claim raised in Williams' petition is unexhausted, because it is based upon facts he did not present to the Appellate Division when he appealed from the judgment of conviction. The Court disagrees.

      When Williams appealed to the Appellate Division, he argued that "the 30 month delay between [his] indictment and rearrest for trial deprived him of his statutory and constitutional rights to due process and a speedy trial [based on] . . . the people's unjustified failure to bother to rearrest [him] . . . ." In addition to the thirty-month delay, Williams' appellate brief included factual allegations relating to the overall four-year delay between his initial arrest and his trial.[2] After the Appellate Division affirmed Williams' conviction, and he sought leave to appeal to the New York Court of Appeals, Williams advised that court that he wanted it to review the same speedy trial claim the Appellate Division considered, based upon the thirty-month delay between his indictment and his rearrest, in the context of the longer four-year delay that occurred between his initial arrest and his trial.

---

      [2] The Court notes that although the petitioner calculates the time from his first arrest until his trial, "it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." Dillingham v. United States, 423 U.S. 64, 65, 96 S. Ct. 303, 304 (1975).

The fact that the petitioner, in his appellate brief and in his application for leave to appeal to the New York Court of Appeals, relied principally on the alleged egregiousness of the thirty-month delay between indictment and rearrest, rather than on the overarching delay between his initial arrest and trial, does not affect the Court's determination that the state court was provided adequate notice of "both the factual and the legal premises" of the claim that Williams now presents in his petition for habeas corpus relief.  Therefore, the Court finds that the petitioner's claim has been exhausted.

*Standard of Review*

Where, as here, a state court has adjudicated the merits of a claim raised in a federal habeas corpus petition, 28 U.S.C. § 2254 informs that a writ of habeas corpus may issue only if the state court's adjudication resulted in a decision that: 1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  See 28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000); Francis S. v. Stone, 221 F.3d 100 (2d Cir. 2000). In addition, when considering an application for a writ of habeas corpus, a federal court must be mindful that any determination of a factual issue made by a state court is to be presumed correct and the habeas corpus applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).

In applying the Antiterrorism and Effective Death Penalty Act ("AEDPA") standard, which became part of 28 U.S.C. § 2254 through that statute's amendment in 1996, the Supreme Court has interpreted "clearly established federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."

Williams, 529 U.S. at 412, 120 S. Ct. at 1522.  A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of the [Supreme] Court and nevertheless arrives at a result different from [that] precedent."  Williams, 529 U.S. at 405-06, 120 S. Ct. at 1519-20. A state court decision involves an "unreasonable application" of Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  Id. at 407-08, 1520-21.  A federal habeas court applying the "unreasonable application" standard should ask whether the state court's application of Supreme Court precedent was "objectively unreasonable" and not merely an incorrect or erroneous application of federal law.  Id. at 409, 1521; see also Francis S., 221 F.3d at 111 (holding that to permit habeas relief under an "unreasonable application" standard, more is required than an incorrect application of federal law, although the "increment of incorrectness" need not be great).

*Sixth Amendment Right To Speedy Trial*

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . " U.S. Const. amend. VI.  No time is set forth in the Constitution within which a trial is necessarily considered timely.  See Barker v. Wingo, 407 U.S. 514, 523, 92 S. Ct. 2182, 2188 (1972).  Rather, to determine whether a violation of the right to a speedy trial has occurred, a court should balance factors such as: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant.  See Barker, 407 U.S. at 530, 92 S. Ct. at 2192; see also Doggett v. United States, 505 U.S. 647, 651, 112 S. Ct. 2686, 2690 (1992).   No one factor is necessary or sufficient to find that a speedy trial violation has occurred, but rather all the factors are to be considered in

light of the relevant circumstances.  Id.

In the instant case, the petitioner contends the Appellate Division's resolution of his speedy trial claim was "contrary to" and an "unreasonable application" of clearly established federal law, as determined by the Supreme Court.  See 28 U.S.C. § 2254(d).  The petitioner's contentions are analyzed below.

*Decision Contrary to Supreme Court Precedent*

In denying the petitioner's speedy trial claim, the Appellate Division reviewed the trial court's application of Taranovich.  In Taranovich, the New York Court of Appeals explained that "the assertion by the accused of his right to a speedy trial requires the court to examine the claim in light of the particular factors attending the specific case under scrutiny." Id. at 445, 373 N.Y.S.2d at 81 (citation omitted).  These factors include, but are not limited to: "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay." Id. at 445, 373 N.Y.S.2d at 82.

The Taranovich factors that the New York courts must consider, when presented with a speedy trial claim, differ slightly from the Barker factors.  The latter accord significance to a criminal defendant's assertion of his speedy trial right and the former do not.  However, the principle articulated in Taranovich is not in conflict with the principle set forth in Barker.  See Williams, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.  Moreover, Taranovich relies on Barker noting "this case illustrates, there are no clear cut answers in such an inquiry, and the trial court must engage in a sensitive weighing process of the diversified factors present in the particular case . . . . the various factors must be evaluated on an ad hoc basis since no rigid precepts may be

formulated which apply to each and every instance in which it is averred that there has been a deprivation of the speedy trial right." Taranovich, 37 N.Y.2d at 445, 373 N.Y.S.2d at 81 (citing Barker, 407 U.S. at 530, 92 S. Ct. at 2192). Therefore, the Court finds that the state court's determination, denying the petitioner's motion to dismiss the indictment due to a Sixth Amendment speedy trial violation, was not "contrary to" Barker and its progeny.

Moreover, the petitioner's specific contention, that "the [Appellate Division's] holding-that inadvertent delay is 'not a reason to dismiss an indictment' is contrary to the rule established in Doggett, that negligent delay, if sufficiently protracted, can be a reason for granting speedy trial relief," is without merit. Petr's Br. at 22.

In Doggett the Supreme Court explained "that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, or for that matter, identify." 505 U.S. at 655-57, 112 S. Ct. at 2693. However, the Court explained that such "presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria . . . and its importance increases with the length of delay." Id. at 656, 112 S. Ct. at 2693.

In the case at bar, the Appellate Division's finding that "inadvertent delay, *by itself*, is not a reason to dismiss an indictment" is consistent with the principles articulated in Doggett and Barker. Williams, 284 A.D.2d at 221, 726 N.Y.S.2d at 269 (emphasis added). In order for inadvertent delay to warrant dismissal of an indictment, it must be accompanied by another Barker factor(s), that weighs in favor of the defendant. See Doggett, 505 U.S. at 655-56, 112 S. Ct. at 2692-93 ("presumptive prejudice [resulting from an excessive delay] cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria . . . ."); see also Barker, 407 U.S. at 533, 92 S.Ct. at 2193 ("We regard none of the four factors identified above as either

a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.").

To the extent that the petitioner is claiming that the facts of his case are indistinguishable from the facts of Doggett, the Court disagrees. Although there are several distinctions between Williams' case and Doggett, the most notable distinctions are the length of delay and the reason for the delay. In Doggett, the delay was 8½ years, which the Supreme Court characterized as "extraordinary" and "excessive." 505 U.S. at 652, 648, 112 S. Ct. at 2691, 2688. Of those 8 ½ years, 6 years were attributed to "official negligence." Id. at 656-57, 112 S. Ct. at 2693-94. Moreover, the Court described the government's failure to rearrest Doggett as "egregious." Id. at 657, 112 S. Ct. at 2694.

In the instant case, the delay at issue is 2½ years. Although a "considerable" delay, Williams, slip op. at 8, it is not extraordinary or excessive, as was the delay addressed in Doggett. Moreover, unlike the situation in Doggett, in the instant case, neither the Appellate Division nor the trial court made a finding that the delay was attributable to the state's negligence.[3]

For the reasons noted above, the Court finds that the Appellate Division's decision was not contrary to Barker and its progeny.

_____

[3] To the extent that the petitioner's claims are based on an allegation that the Appellate Division's factual determination, that the police officers' efforts to locate him did not constitute negligence and were "reasonable," is objectively unreasonable, that matter is not addressed here but will be addressed infra.

-11-

*Unreasonable Application of Supreme Court Precedent*

The petitioner claims that "the state court's decision was an unreasonable application of the controlling precedent to the facts before it."  Specifically, the petitioner contends the state court's determination, that "the police acted reasonably . . . is indefensible when examined in light of the established facts."  The petitioner contends further that the state court's determination, that "the police acted reasonably" in their efforts to apprehend him was unreasonable, because a "negligent lapse cannot be characterized as 'reasonable' conduct." Petr's Br. at 22.

Although the petitioner contends this branch of his habeas corpus claim is within AEDPA's "unreasonable application of, clearly established Federal law . . ." standard, see 28 U.S.C. 2254(d)(1), the Court disagrees.  The petitioner's claim touches upon the state court's determination of factual issues -- a matter that will be analyzed below -- and implicates 28 U.S.C. § 2254(e)(1).

In affirming the trial court's denial of Williams' motion to dismiss the indictment, based upon a violation of his Sixth Amendment right to a speedy trial, the Appellate Division weighed the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the seriousness of the crime; and (4) the prejudice caused to Williams by the delay.  In weighing these factors, the Appellate Division engaged in a Barker-like balancing test, and reasonably concluded that Williams' Sixth Amendment right to a speedy trial was not violated.  Therefore, the Court concludes that the Appellate Division's determination was not based on an unreasonable application of Barker.

*Factual Determinations*

Any determination of a factual issue made by a state court is presumed correct, and the

petitioner has the burden of rebutting the presumption by "clear and convincing evidence."

28 U.S.C. § 2254(e)(1).  In the instant case, the Appellate Division's factual determination, that

"[t]he police acted reasonably and in good faith in attempting to locate defendant" is presumed to

be correct, unless Williams rebuts the presumption of correctness by clear and convincing

evidence.  See 28 U.S.C. § 2254(e)(1).

> In evaluating the reason for the delay, the Appellate Division found the following:

> The police acted reasonably and in good faith in attempting to locate defendant. While the reasons for the delay may not be compelling, and further efforts might have been made by the investigating detective, inadvertent delay, by itself, is not a reason to dismiss an indictment.

Williams, 284 A.D.2d at 221, 726 N.Y.S.2d at 269.

At first glance, the Appellate Division's factual finding, that the "police acted reasonably

and in good faith," appears to be contradicted by the court's subsequent characterization of the

delay as "inadvertent" since "inadvertent" means inattentive or negligent.[4]   Such a reading of the

Appellate Division's decision could support a conclusion that its factual finding is objectively

unreasonable.  However, the Appellate Division's decision must be read in light of the entire

record, see James v. Lord, No. 94 Civ. 195A, 1995 WL 818853, at *3 (W.D.N.Y. June 22, 1995)

and, in particular, the trial court's October 27, 1997 decision on Williams' motion to dismiss his

indictment.  Any confusion about whether the Appellate Division found the delay at issue in

Williams' case reasonable or negligent is resolvable by looking to the trial court's determination

on the issue, which was adopted by the Appellate Division.  The trial court's finding, in which

the Appellate Division concurred, was that the delay between Williams' indictment and his

---

[4] Inadvertent is defined as "[n]ot properly attentive or observant; inattentive, negligent; heedless."  Oxford English Dictionary, Vol. VII, at 770 (2d ed. 1989).

rearrest was not "unreasonable," <u>Williams</u>, slip op. at 12, because it was "more likely attributable at least in part to the extent of criminal behavior occurring in the 41st Precinct . . . . There were apparently insufficient [police] resources to actively pursue every wanted subject." <u>Id.</u> at 10-11. Moreover, based on the evidence relied upon by the trial court, in reaching its factual determination on the reason for the delay in rearresting Williams, the Court finds the state court's factual finding is objectively reasonable.

Since Williams has not rebutted the presumption of correctness accorded a state court's factual findings by clear and convincing evidence, the Appellate Division's factual determination, that "[t]he police acted reasonably and in good faith in attempting to locate defendant," is presumed to be correct. <u>See</u> 28 U.S.C. § 2254(e)(1).

The Court finds that the Appellate Division's decision affirming the trial court's denial of Williams' speedy trial claim is neither contrary to, nor an unreasonable application of <u>Barker</u>. Moreover, Williams has not rebutted the presumption of correctness that is to be afforded to the state court's findings of fact.  Accordingly, the petitioner is not entitled to habeas corpus relief on his speedy trial claim.

## IV.  RECOMMENDATION

For the reasons set forth above, I recommend that petitioner's application for a writ of habeas corpus be denied.

## V.  FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  <u>See</u> <u>also</u> Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk

of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, 40

Centre Street, Room 410, New York, New York, 10007, and to the chambers of the undersigned,

40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of

time for filing objections must be directed to Judge Daniels. FAILURE TO FILE OBJECTIONS

WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL

PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO

Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298,

300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v.

Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York          Respectfully submitted,
       December 14, 2006

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Mailed copies to:

Lawrence T. Hausman, Esq.
David S. Weisel, Esq.

-15-